## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| BRIOVARX, LLC, | |
| Plaintiff, | |
| v. | No. _____ |
| JERRY SAVEDRA AND VALLEY CAMPUS PHARMACY, INC., D/B/A TNH PHARMACY II, | Jury |
| Defendants. | |

### PLAINTIFF'S ORIGINAL COMPLAINT FOR
### INJUNCTIVE RELIEF AND DAMAGES

Plaintiff BriovaRx, LLC ("BriovaRx" or the "Company") sets out its complaint for injunctive relief and damages against Defendants Jerry Savedra ("Savedra") and Valley Campus Pharmacy, Inc., doing business as TNH Pharmacy II ("TNH") (together, "Defendants").

### NATURE OF THE ACTION

1.      This is an action against Savedra (a former employee of BriovaRx) and TNH (Savedra's new employer and a direct competitor of the Company) that stems from their misappropriation of BriovaRx's confidential information, including trade secrets, and sensitive patient health information containing several health information identifiers ("protected health information" or "PHI") subject to protections under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

2.      BriovaRx is a specialty pharmacy that provides patients with medications and therapies to treat complex medical conditions and diseases.  In the course of its business, BriovaRx works closely with referral sources, marketing its products and services to specialty

pharmacy patients' prescribers, including specialty group medical practices and the physicians, nurses and other health care professionals who comprise such group practices ("Referral Sources").

3.      Until his resignation from the Company on July 17, 2013, Savedra was a Senior Oncology Sales Specialist at BriovaRx.   In this position, Savedra was responsible for the marketing and sale of the Company's products and services for the territory including Texas and part of Louisiana.  In addition to his direct dealings with BriovaRx's Referral Sources, Savedra had access to confidential information relating to the Company's business and protected health information relating to patients of the Company's Referral Sources.

4.      Given his access to these legitimate and protectable interests of the Company, Savedra signed an Employment Confidentiality Agreement on August 24, 2011 (the "Confidentiality Agreement") and signed an annual Sales Incentive Agreement most recently on April 18, 2012 (the "Incentive Agreement") (together, the "Agreements").  Among other things, the Agreements preclude Savedra from using or disclosing BriovaRx's confidential information or protected health information.  The Agreement also required Savedra to immediately return all such information and other property belonging to the Company upon termination of his employment.

5.      In addition, BriovaRx has implemented numerous policies to safeguard protected health information in accordance with HIPAA.  Savedra is well aware of these HIPAA policies and in particular of HIPAA's patient confidentiality mandates because he has been extensively trained in compliance with HIPAA and the Company's Code of Ethics.  Savedra agreed to comply with these policies as a condition of his employment with the Company.

6.      BriovaRx wrote to Savedra on August 8, 2013 to remind him of his continuing obligations under the Agreements and in accordance with the HIPAA policies.  Unbeknownst to BriovaRx at the time, in the weeks both prior and subsequent to his resignation from the Company, Savedra improperly accessed, without authorization, and downloaded BriovaRx documents and data from his Company-issued laptop computer and iPad onto a number of portable electronic storage devices.   Savedra also improperly uploaded and/or transferred BriovaRx documents and data to his personal e-mail account.  These documents and data contain BriovaRx's confidential information and protected health information.

7.      Upon subsequently discovering the improper computer-related activity, BriovaRx demanded that Savedra return all documents and data containing the Company's confidential information and protected health information.  BriovaRx also requested that Savedra submit the devices and other media connected to or accessed from his Company-issued laptop computer and iPad for forensic examination, and that Savedra not delete, access, download or transmit any documents or data from the referenced media.

8.      BriovaRx also notified and informed TNH of Savedra's post-employment obligations and his improper computer-related activity.  The Company also sought assurances that TNH would not allow Savedra to rely upon, use or disclose BriovaRx's confidential information or protected health information in connection with his employment.   TNH acknowledged receipt of the correspondence, but it has otherwise refused to acknowledge the misappropriation or cooperate with BriovaRx to ensure the protection, non-use and return of the documents and data misappropriated by one of its employees.

9.      Although Savedra has admitted to possessing BriovaRx documents and data, he has not accounted for or returned them to the Company.  Instead, Savedra has improperly

accessed, used, transferred and/or copied the BriovaRx documents and data since the commencement of his employment with TNH and, upon information and belief, he has been using and/or disclosing or will inevitably use or disclose BriovaRx's confidential information and protected health information on behalf of TNH to unfairly compete against the Company. Savedra also has taken steps to erase and delete electronically stored information and data from at least the Company-issued laptop computer and iPad in a concerted effort to cover up and conceal his misappropriation and improper computer-related activity.

10.     In breaching the Agreements and otherwise violating Texas and federal law, Savedra and TNH (both vicariously and otherwise) have caused irreparable harm to BriovaRx and, unless restrained and enjoined from further misconduct, the Company will continue to suffer such harm to its legitimate and protectable business interests and goodwill.  In addition to injunctive relief, BriovaRx has incurred financial harm from Defendants' misconduct and seeks compensatory and exemplary damages, reasonable attorneys' fees and such other relief as the Court deems just and proper.

## THE PARTIES

11.     BriovaRx is an Alabama limited liability company with its principal place of business located at 1600 McConnor Parkway, Schaumburg, IL 60173-6801.  The sole member of BriovaRx is BriovaRx of Maine, Inc., a Maine corporation with its principal place of business located in Portland, Maine.  BriovaRx is therefore a citizen of the states of Alabama, Illinois and Maine.

12.     Savedra, a natural person and resident of Harris County, Texas, may be served with process at 6301 Almeda Road, #216, Houston, Texas 77021, or wherever else he may be found.

13.     TNH is a California corporation with its principal place of business located at 15211 Vanowen Street, Van Nuys, California 91405.  TNH does business in Texas, but is not registered with the Texas Secretary of State, does not maintain a regular place of business in Texas, and does not maintain an agent for service of process, as required by Texas law. Accordingly, pursuant to Texas Civil Practice and Remedies Code § 17.044, TNH may be served with process by serving the Texas Secretary of State, who may then serve TNH by certified mail, return receipt requested, at its home office.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.  Jurisdiction also is proper in accordance with 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

15.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred, and continue to occur, in this District.

## BACKGROUND FACTS

### —BRIOVARX AND THE SPECIALTY PHARMACY INDUSTRY—

16.     BriovaRx is a specialty pharmacy.  A specialty pharmacy provides medications created to target and treat complex medical conditions and rare diseases.  These medications are often referred to as "therapies" for particular conditions.  Such medications can require special handling, including refrigerated transportation and sometimes self-administration training for end-users and/or family members to promote their safe and efficacious use.  BriovaRx provides these various services, among others, along with filling the prescriptions for the medications.

Health care professionals and pharmacy prescribers refer patient customers to BriovaRx to provide specialized medications and other therapy services.

17.     BriovaRx has pharmacy locations in Alabama, Georgia, Kansas, Louisiana, Massachusetts, Maine, Mississippi, Nevada, Tennessee, Texas and West Virginia.   Some specialty pharmacy prescriptions are also filled at these pharmacies for mailing to other states.

18.     The specialty pharmacy industry is highly competitive.   In 2011, specialty medication sales made up $77.5 billion of all prescription drug sales.

19.     Building, obtaining and maintaining beneficial relationships with Referral Sources, with the patients for whom specialty pharmaceuticals are prescribed, and/or with such patients' responsible caregivers (such as the parents of pediatric patients) takes years of marketing and sales efforts.   BriovaRx invests heavily in the development of its national marketing and sales force for this purpose.

20.     Prescription and patient information received from health care professionals and pharmacy prescribers is highly confidential information and includes protected health information subject to HIPAA privacy mandates, such as patients' and prescribers' names and other patient-identifying data, medication and clinical histories, diagnoses and conditions.   Such information has great commercial value within the specialty pharmacy industry.

21.     As covered entities under HIPAA, BriovaRx and TNH have a duty to keep protected health information confidential.   The unauthorized or wrongful use or disclosure of such information may obligate BriovaRx and TNH to take certain federally-mandated measures, including, but not limited to, the issuance of reports to regulatory authorities and the patients whose PHI has been misappropriated, disclosed and/or used without authority in accordance with applicable HIPAA privacy and security standards.

22.     To effectively compete in the specialty pharmacy industry, BriovaRx also has developed, compiled and maintained confidential information, including trade secrets, relating to its business.  This information includes, but is not limited to:

(a)     business information, including business plans, methods and practices, unpublished financial information, profit data and profit margin information, forecasts and other proprietary business information;

(b)     Referral Source information, including provider and referral lists, patient and medication lists, insurance payer information, contract terms, renewals and expirations, protected health information, purchasing preferences and requirements, and other valuable Referral Source information and data;

(c)     pricing structures and incentive plans, service and product costs, sales projections, marketing and service plans and strategies, manufacturing, procurement and sourcing information; and

(d)     methods of operation, computer programs and databases, research projects and other intellectual property.

23.     BriovaRx confidential information is a product of substantial time, effort and expense allocated by the Company.  BriovaRx does not disclose its confidential information to third parties absent a legitimate business purpose and a corresponding confidentiality/non-disclosure agreement or obligation.

24.     BriovaRx confidential information is sufficiently secret to derive economic value because it is not generally known to the specialty pharmacy industry or publicly available.  Nor is such proprietary information readily accessible or easily compiled and reproduced by competitors or others by lawful means.  For these and other reasons, BriovaRx confidential information affords the Company a competitive advantage.

25.     BriovaRx has taken reasonable measures to maintain the secrecy of its confidential information and protected health information.  These measures include, without limitation, the following:

(a)  implementing confidentiality and other agreements that describe confidential information, and impose nondisclosure and return of property obligations;

(b)  training employees and implementing data privacy and code of conduct policies describing confidential information and emphasizing the importance of maintaining the confidentiality of such information and the repercussions of any improper copying or misuse;

(c)  disclosing confidential information on limited bases to only those persons who need to know such information to perform their work for the Company and/or as necessary to conduct business;

(d)  maintaining confidential information on password-protected computer systems, networks and databases with login procedures that restrict access to Company personnel on a need-to know basis; and

(e)  conducting exit interviews and reminding departing employees of their obligations to return all confidential information and other property belonging to the Company at the conclusion of the employment relationship.

26.    If BriovaRx confidential information were disclosed to or used by a competitor, such competitor would be able to unfairly compete against the Company in the specialty pharmacy industry.  Under such circumstances, the economic value of and goodwill associated with such information would be irreparably damaged, if not completely lost, as would the Company's advantage over its competitors in the specialty pharmacy industry.

## —BriovaRx's Employment of Savedra—

27.    Savedra worked for BriovaRx as a Senior Oncology Sales Specialist.  The primary specialty therapies that he sold on behalf of the Company were used to treat cancer. Savedra's sales territory included Texas and Louisiana.

28.    As a sales employee, Savedra's duties included making direct sales calls on Referral Sources for existing and/or prospective patients requiring specialty pharmacy products and services, following-up on all referrals to ensure prescribers', patients' and patients' family member satisfaction, facilitating necessary patient and caregiver education, and helping Referral

Sources and Patients to understand third-party reimbursement, coordinating medication training or instructions and dealing with drug manufacturers.

29.     Savedra had numerous sales accounts assigned to him by BriovaRx throughout his territory during his employment with BriovaRx, and he generated net profits for these accounts in the amount of approximately $159,252 for 2012 and $226,097 from January through June 2013.

30.     In connection with his BriovaRx employment duties and responsibilities, and only for purposes of advancing the Company's business interests, BriovaRx provided Savedra access to and use of BriovaRx's confidential information and protected health information upon the express condition that such information be kept and maintained confidential, used only for BriovaRx's business purposes and not used or disclosed to others, nor exploited or used in competition with the Company.

### —Savedra's Confidentiality and Related Obligations—

31.     Given Savedra's access to confidential information and protected health information, as well as his dealings with Referral Sources on behalf of the Company, BriovaRx's predecessor, MedfusionRx, LLC ("MedfusionRx"), required Savedra to sign certain agreements in connection with his employment.  These agreements subsequently inured to the benefit of the Company in October 2012 when Medfusion amended its articles of organization to change its name to BriovaRx as part of a rebranding strategy.

32.     The name change from Medfusion to BriovaRx occurred after the acquisition of Medfusion by SXC Health Solutions Corporation ("SXC Health Solutions") in December 2010. SXC Health Solutions also changed its name to Catamaran Inc. in July 2012 as part of a corporate restructuring.   As a result, Medfusion became a wholly-owned subsidiary of Catamaran, Inc. in July 2012 and, subsequent to its name change, BriovaRx thereafter became a

wholly-owned subsidiary of Catamaran Inc. as of October 2012.   Catamaran Inc. thereafter converted to Catamaran LLC in December 2012 ("Catamaran").   Medfusion and BriovaRx constitute a single entity that employed Savedra at all relevant times.

33.     The Incentive Agreement contains certain post-employment confidentiality and nondisclosure obligations.  Among other things, Savedra acknowledged that he would be granted access to confidential information (defined therein as "Confidential and Proprietary Information") and, due to the highly sensitive nature of such information, he agreed not to disclose or use any such information subsequent to his employment with the Company.  (A copy of the Incentive Agreement is attached hereto as **Exhibit 1**.)

34.     Savedra also signed a Confidentiality Agreement wherein Savedra acknowledged that he would have access to protected health information, including patient charts and other patient information, as part of his employment with the Company.  Savedra also agreed therein that all information pertaining to patients and their health care will be kept confidential and must not be disclosed to anyone either during or after employment.   (A copy of the Confidentiality Agreement is attached hereto as **Exhibit 2**.)

35.     In addition to the post-employment nondisclosure and confidentiality obligations under the Agreements, Savedra agreed to abide by the policies set forth in the Medfusion Employee Handbook dated January 1, 2010 ("Medfusion Employee Handbook").  These policies make clear that protected health information is both legally and ethically confidential and, therefore, all employees are required to abide by the Employee Confidentiality/HIPAA Statement.  The Medfusion Employee Handbook also provides in relevant part as follows:

Confidential information is valuable and sensitive and is protected by law (HIPAA) and Medfusion policies and procedures.  The intent of these laws and policies is to ensure that confidential information remain confidential, that is it will only be used as necessary to accomplish the organization's mission.  All employees must conform to applicable laws and Company policies governing confidential information.   (Please refer to the MedfusionRx Employee Confidentiality/HIPAA Statement.)

(Relevant pages of the Medfusion Employee Handbook are attached hereto as **Exhibit 3**.)

36.     Savedra also agreed to comply with Catamaran policies concerning the treatment of the Company's confidential information and protected health information.  (Relevant pages of the Catamaran Employee Handbook, together with the HIPAA Privacy and Security Policies and Procedures, HIPAA Confidentiality Statement and Code of Business Conduct and Ethics are attached hereto as **Group Exhibit 4**.)

### —Savedra's Misappropriation of BriovaRx Confidential Information and PHI—

37.     Savedra submitted his resignation to BriovaRx *via* e-mail on July 3, 2013, effective July 17, 2013.  David Goerz ("Mr. Goerz"), Savedra's supervisor, then inquired with Savedra that same day as to his future employment plans.  Savedra was vague concerning his employment plans following separation from BriovaRx, but he denied having any intention to work for another specialty pharmacy, and he specifically represented that his new employer did not compete with BriovaRx.  Mr. Goerz also requested Savedra to return his Company-issued laptop computer and iPad.

38.     Despite Savedra's representations to the contrary, BriovaRx subsequently learned that Savedra accepted a position as Business Development Manager in the specialty pharmacy sales field with TNH.  BriovaRx and TNH are direct competitors in the specialty pharmacy industry.  As a Business Development Manager, Savedra performs in a capacity that is the same

as or substantially similar to the business activities and services Savedra performed on behalf of BriovaRx as Senior Oncology Sales Specialist.

39.     Savedra's employment with TNH also is based in the same geographic area in which he worked for BriovaRx.  Upon information and belief, Savedra is expanding TNH's products and services to encompass the territory including Texas and Louisiana.

40.     On July 23, 2013, Savedra returned the Company-issued laptop computer to BriovaRx.  Savedra did not return the Company-issued iPad.  Thereafter, on August 5, 2013, Senior Human Resources Manager Gail Lentz ("Ms. Lentz") e-mailed Savedra and again directed him to return the iPad.

41.     Given the competitive overlap and risk of harm to the Company's legitimate and protectable business interests, BriovaRx also sent Savedra a reminder letter on August 8, 2013 regarding his post-employment nondisclosure and confidentiality obligations.  The letter demanded that Savedra return the iPad and any marketing materials and confidential information/protected health information in his possession.  The letter also instructed Savedra not to alter, delete or otherwise modify any data, files or documentation, whether in electronic or hard copy form, prior to returning it as directed.

42.     Savedra thereafter e-mailed Ms. Lentz on August 15, 2013 and stated that he would return the iPad.  Four days later, on August 19, 2013, Savedra returned the iPad to the Company.

43.     Concerned that Savedra was planning to divert prescriptions of existing BriovaRx Referral Sources to TNH (based in part on Savedra's misrepresentations in his interview with Mr. Goerz and his significant delay in returning the laptop computer and iPad), BriovaRx further investigated Savedra's computer-related activity.

44.     BriovaRx submitted Savedra's Company issued laptop computer and iPad to an outside computer forensic examiner for forensic imaging and analysis.  The forensic examiner subsequently issued a report on August 22, 2013 showing that Savedra improperly reviewed, copied, downloaded and deleted various BriovaRx documents and data stored on the laptop computer from at least July 2, 2013 through well after his last day of employment on July 17, 2013.

45.     The forensic examiner report also showed that, between July 2 and July 22, 2013, Savedra attached three external hard drives into his Company-issued laptop.  Each of the external hard drives has the storage capacity to hold millions of pages of documents.

46.     To determine if Savedra copied BriovaRx documents and data onto the external hard drives, the forensic examiner analyzed "link files," otherwise known as Windows shortcut files, which record when certain files have been accessed and identify the location from which they were accessed.

47.     Link files on Savedra's Company-issued laptop computer confirmed that there were numerous instances in July 2013 of documents having been accessed from the external hard drives that had been attached to the laptop.  For example, two folders associated with files accessed from the external hard drives were "BIOSCRIP FILES" and "CLEN."  These folders contain documents and data relating to the Company's business, and Savedra accessed a significant number of files in these folders on July 15, 2013 that contain BriovaRx's confidential information and/or protected health information.  In addition, on July 22, 2013—after he was no longer employed by BriovaRx—Savedra accessed the files "referrals.docx" and "growth hormone.docx" from one of the external hard drives.  These documents also contain BriovaRx's confidential information and/or protected health information.

48.     At no time did Savedra seek or obtain approval or authorization from BriovaRx to attach the external hard drives to his Company-issued laptop computer.  Nor was there any business reason or purpose for Savedra to do so, given that such documents were accessible from the laptop and/or the Company's secured computer systems, networks and/or databases.  In addition, some of the documents and data accessed by Savedra contain information on medications and therapies outside the scope of Savedra's employment responsibilities for which there was no business reason for him to access.

49.     The forensic examiner report also revealed that Savedra used his Company-issued laptop computer to transmit BriovaRx documents and data to a personal e-mail account.  For example, on July 3, 2013, less than 15 minutes after submitting notice of his resignation, Savedra sent an e-mail from his BriovaRx e-mail account to his personal e-mail account (jerrysavedra@att.net) containing as an attachment the file "HCV.docx," a 54-page Microsoft Word document containing approximately 100 screen shots from a report entitled "02 – Operations – REFERRALS – RPT2027."  These screen shots contain not only information identifying physicians, but also information identifying patients, their medical conditions and drugs they were prescribed.  Moreover, Savedra did not market or sell Hepatitis C ("HCV") therapies and had no business reason to access the "02 – Operations – REFERRALS – RPT2027" document.

50.     Savedra also e-mailed to his personal e-mail account on July 3, 2013 BriovaRx liability insurance information for various Company locations.

51.     Beyond these post-resignation e-mails, the forensic examiner further determined that Savedra sent or received over 2,000 e-mails from his personal e-mail account within hi work e-mail account that were sent or received during the course of Savedra's employment with the

Company.  Upon information and belief, these e-mails and/or their attachments currently reside in Savedra's personal e-mail account or other electronic media in the possession of Savedra and contain BriovaRx's confidential information and/or protected health information.

52.    On July 9, 2013, Sade Johnson ("Ms. Johnson"), a Catamaran Sales Support Representative, sent to Savedra's BriovaRx e-mail address a referral reporting package showing the new prescription referrals received for Savedra's assigned therapies.  On July 11, 2013, Ms. Johnson sent another referral reporting package to Savedra's BriovaRx e-mail address.  The referral reporting packages contained a compilation of confidential information, trade secrets and protected health information, such as patient names, diagnoses, patient prescriptions and physician names.

53.    On July 11, 2013, Savedra forwarded the referral reporting packages to his personal e-mail address.  There are other e-mails sent from the Company-issued laptop computer to Savedra's personal e-mail account that also comprise and/or attach documents containing BriovaRx's confidential information and/or protected health information.

54.    At no time did Savedra seek or obtain approval or authorization to transmit e-mails and documents containing BriovaRx's confidential information or protected health information from his work e-mail account to his personal e-mail account.  Nor was there any business reason and or purpose for Savedra to do so, given that such e-mails and documents were accessible from his work e-mail account and/or the Company's secured computer systems, networks and/or databases.  In addition, some of the e-mails and documents that Savedra transmitted to his personal e-mail account contain information on medications and therapies outside the scope of his employment responsibilities for which there was no business reason for him to transmit.

55.     The forensic examiner report further showed that Savedra took actions to delete BriovaRx documents and data from the Company-issued laptop and iPad.  Notably, on July 22, 2013, Savedra deleted over 40 BriovaRx files into the laptop's recycle bin.  These files include BriovaRx's confidential information such as prescription, vendor request, check request, and sales payer contracting inquiry forms, physician lists with contact information, and a "specialty sales tool" used to filter for physicians by therapy and drug name.

56.     On August 19, 2013, despite BriovaRx's instructions to the contrary, Savedra also reset the iPad to its factory default settings prior to returning it to BriovaRx.  This action permanently removed the content from the device and precluded a determination of what BriovaRx data had been stored thereon and how it had been used.

57.     The documents accessed, downloaded, transferred and/or deleted by Savedra from his Company-issued laptop computer to the various sources of media, as described above, contain BriovaRx's confidential information.   The economic value associated with this information is immeasurable in term of the competitive advantage that it provides to the Company and, to the extent improperly used or disclosed by Savedra and/or TNH in competition with the Company, is worth not less than $159,252 in annual lost profits (excluding the goodwill associated with the secrecy of the information).

58.     The documents accessed, downloaded, transferred and/or deleted by Savedra from his Company-issued laptop computer to the various sources of media, as described above, also contain protected health information.  Such misappropriation could subject BriovaRx to HIPPA notification requirements regarding the breach of unsecured protected health information. Numerous states laws also mandate that businesses notify affected individuals (and, in certain instances, states' attorneys general and agencies, consumer reporting agencies and the media) in

the event of a breach of sensitive personally identifiable information, which may include medical information and/or health insurance information.

### —SAVEDRA AND TNH REFUSE TO ACKNOWLEDGE OR RETURN BRIOVARX CONFIDENTIAL INFORMATION AND PHI—

59.     On August 23, 2013, BriovaRx sent a letter to Savedra.  The letter demanded that Savedra return all Company information or material in his possession, including the electronic hard drives he inserted into the Company-issued laptop computer.  BriovaRx also requested Savedra to provide written assurances that he had not kept, transferred to others, used or permitted others to use any BriovaRx business information or protected health information.

60.     After discovering the misappropriation, BriovaRx also sent a letter to TNH on August 26, 2013 to inform it of Savedra's post-employment obligations to the Company. BriovaRx also advised TNH that computer forensics confirmed that Savedra copied and/or accessed numerous documents and data from Company-issued computer equipment on repeated occasions just before and subsequent to his separation from the Company.  BriovaRx also noted that Savedra had sent protected health information that he obtained from the Company to his personal e-mail address minutes after tendering his resignation.  BriovaRx expressed concern to TNH that Savedra may also have improperly used or disclosed the Company's confidential information and protected health information to TNH or that he planned to do so in the course of his employment with TNH.

61.     BriovaRx requested that TNH immediately investigate and that it:  (i) cease and desist from using or disclosing any (through Savedra or otherwise) BriovaRx confidential information or protected health information for any purpose; (ii) safeguard, preserve (without deletion or alteration) and immediately return to BriovaRx any files, lists or other materials belonging to the Company that may be in TNH's possession, custody or control without

retaining any copies thereof; (iii) provide written assurances that TNH is not in possession, custody or control of any files, lists or other materials belonging to BriovaRx; and (iv) immediately take such other disciplinary measures concerning Savedra's actions as may be necessary to stop any recurrence thereof, including, but not limited to, the termination of Savedra's employment.

62.     TNH sent a letter on August 27, 2013 generally denying wrongdoing and refusing to comply with BriovaRx's August 26, 2013 demands.

63.     Savedra thereafter sent a letter to BriovaRx on August 28, 2013 denying that he had done anything wrong or that he had used or disclosed any BriovaRx confidential or protected health information.   Notwithstanding the foregoing, Savedra admitted to trying to download BriovaRx computer files onto external hard drives, but claimed that he was unable to access the files because the downloads were unsuccessful or the hard drives were corrupted.   Savedra also admitted to sending the "HCV.docx" and BriovaRx's liability insurance information to his personal e-mail account, but he stated that he could not open the documents.

64.     After receiving the letters from TNH and Savedra, BriovaRx conducted further computer forensics on the Company-issued laptop computer and discovered no associated e-mail delivery failure message of the e-mail containing the "HCV.docx" file and confirmed that the attachment could be opened in Word format.

65.     Savedra's letter also claimed that he reset the iPad to factory settings so as to remove all of his personal documents from the device.   A simple and far less destructive approach to removing Savedra's personal documents from the iPad (assuming that any were even there) would have been to turn off the iCloud synchronization within the iPad's settings. Although a user who has set up an iCloud account should know how to turn it off, a Google

search for "disable iCloud iPad" brings up as the first item an Apple support article that specifically describes how to turn off iCloud on an iPad.  (http://support.apple.com/kb/PH2613).

66.     On August 30, 2013, BriovaRx responded to TNH's August 27 letter with specific evidence of Savedra's misappropriation of the Company's confidential information and protected health information.  BriovaRx requested TNH to detail, among other things, the steps it had taken to determine whether Savedra had retained and/or disclosed such information and to prevent Savedra from retaining, disclosing or using it on behalf of TNH in competition with BriovaRx.

67.     BriovaRx also sent evidence preservation notices to both Savedra and TNH on September 3, 2013.  Again, BriovaRx requested Savedra to return all of the documents and data he retained subsequent to his resignation from the Company and to submit the hard drives he connected to his Company-issued laptop computer to BriovaRx for forensic examination so the Company could confirm the accuracy of the representations Savedra made in his August 28 letter.  Counsel for BriovaRx called Savedra's counsel that same day to discuss the contents of the letter.

68.     Savedra's counsel returned BriovaRx's counsel's call on September 4, 2013 and represented that he would be unavailable until September 10 and was unable to confirm whether Savedra would submit for forensic examination the hard drives he attached to his Company-issued laptop to BriovaRx.

69.     On September 6, TNH responded to BriovaRx's August 30 and September 3 letters, again denying any wrongdoing.  TNH represented, without describing the specific steps it took, that it had taken internal measures to ensure that Savedra had not retained, disclosed or used any of BriovaRx's confidential information or protected health information.  TNH also

stated that it had instructed Savedra to return any hardware or materials containing BriovaRx's confidential information or protected health information.

70.     BriovaRx sent follow-up letters to both TNH and Savedra on September 9, 2013 requesting signed affidavits so the Company could fully assess the extent of Savedra's misappropriation of protected health information in connection with the Company's HIPAA reporting obligations.   BriovaRx asked TNH to confirm that it had not received protected health information from Savedra.   BriovaRx asked Savedra to affirm that he was unable to open the Microsoft Word document "HCV.docx" and that he had not transmitted or retained any other PHI he obtained as a result of his employment with BriovaRx.   Neither TNH nor Savedra would agree to provide such affidavits.   Indeed, TNH, by its counsel's September 11, 2013 letter, attempted to barter with BriovaRx for affidavits confirming the security of the private healthcare information that Savedra misappropriated, stating, in relevant part, "…I am unwilling to advise my client's officers to sign the affidavit that you have requested, absent TNH's receiving in return a full waiver and release of claims from Briova and all of its affiliated persons and entities…"

71.     BriovaRx sent additional letters to TNH and Savedra on October 7, 2013, urging both parties to turn over the electronic devices Savedra used in his misappropriation of BriovaRx confidential information and execute affidavits swearing that the patient health information Savedra took has not been used or disclosed to other people or entities.   On October 10, 2013, Savedra's counsel sent an email stating he was still reviewing the HIPAA issues and would respond in time.   On October 14, TNH's counsel, *via* letter, again refused to provide sworn assurances that it had not received protected health information from Savedra.

## COUNT I – BREACH OF CONTRACT
### (Savedra)

72.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 72 of Count I.

73.     The Incentive Agreement and Confidentiality Agreement each constitute valid and legally enforceable contracts entered into in connection with the commencement of Savedra's employment and supported by valuable consideration.

74.     BriovaRx has at all times performed and fulfilled its obligations under the Agreements and with respect to Savedra's employment.

75.     Savedra has breached and continues to breach the Incentive Agreement by misappropriating, retaining, failing to return, disclosing and/or using BriovaRx confidential information on behalf of TNH in direct competition with the Company.

76.     Savedra has breached and continues to breach the Confidentiality Agreement by misappropriating, retaining, failing to return, disclosing and/or using protected health information entrusted to BriovaRx by its customers and Referral Sources on behalf of TNH in direct competition with the Company.

77.     The foregoing breaches and continuing breaches have proximately caused and, unless restrained and enjoined, will continue to cause BriovaRx severe, immediate and irreparable harm, damage and injury for which the Company has no adequate remedy at law.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count I and award the following relief:

      (a)     preliminary and permanent injunctive relief as set forth in Count XII;

      (b)     compensatory, consequential and incidental damages in an amount to be determined at trial;

(c)     reasonable attorney's fees and costs incurred through trial and any subsequent appeals pursuant to Texas Civil Practice and Remedies Code § 38.001, *et seq.*; and

(d)     such other relief as the Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY

### (Savedra)

78.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 78 of Count II.

79.     By virtue of his employment with the Company, Savedra owed BriovaRx certain fiduciary duties, including, but not limited to, a duty to protect, and to not disclose or exploit for himself or for others, confidential information or protected patient information entrusted to him as an employee of BriovaRx.  This common law duty survives the termination of Savedra's employment with the Company.

80.     Savedra breached (both prior and subsequent to the termination of his employment) and continues to breach his fiduciary duties by misappropriating, retaining, failing to return, disclosing and/or using BriovaRx confidential information and protected health information on behalf of TNH in direct competition with the Company.

81.     The foregoing breaches and continuing breaches have proximately caused and, unless restrained and enjoined, will continue to cause BriovaRx severe, immediate and irreparable harm, damage and injury for which the Company has no adequate remedy at law.

82.     The foregoing breaches and continuing breaches were knowing, intentional, malicious and of such an aggravated character as to warrant the imposition of exemplary damages.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count II and award the following relief:

(a)     preliminary and permanent injunctive relief as set forth in Count XII;

(b)     imposition of a constructive trust and disgorgement of salary/commissions wrongfully paid by BriovaRx to Savedra;

(c)     compensatory, consequential and incidental damages in an amount to be determined at trial;

(d)     exemplary damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq.*; and

(e)     such other relief as the Court deems just and proper.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT
### (TNH)

83.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 83 of Count III.

84.     The Incentive Agreement and Confidentiality Agreement each constitute valid and legally enforceable contracts between BriovaRx and Savedra.

85.     TNH was aware and had knowledge of the Agreements and Savedra's post-employment obligations concerning nondisclosure and confidentiality set forth therein.

86.     TNH knowingly, intentionally and without privilege, justification or excuse engaged in conduct that interfered with BriovaRx's contractual rights under the Agreements.

87.     TNH purposefully induced, caused, encouraged or failed to take action to prevent Savedra from misappropriating, retaining, failing to return, disclosing and/or using BriovaRx confidential information on behalf of TNH in breach of the Incentive Agreement.

88.     TNH also purposefully induced, caused, encouraged or failed to take action to prevent Savedra from misappropriating, retaining, failing to return, disclosing and/or using protected health information entrusted to BriovaRx by its customers and Referral Sources on behalf of TNH in breach of the Confidentiality Agreement.

89.     TNH willfully and maliciously interfered with Savedra's contractual obligations to undermine BriovaRx and its business by unfairly competing against the Company as described above.   Such misconduct was knowing, intentional, malicious and of such an aggravated character as to warrant the imposition of exemplary damages.

90.     TNH's tortious inference is outside the scope of mere competition, and it has proximately caused and, unless restrained and enjoined, will continue to cause BriovaRx severe, immediate and irreparable harm, damage and injury for which the Company has no adequate remedy at law.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count III and award the following relief:

(a)     preliminary and permanent injunctive relief as set forth in Count XII;

(b)     compensatory, consequential and incidental damages in an amount to be determined at trial;

(c)     exemplary damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq.*; and

(d)     such other relief as the Court deems just and proper.

## COUNT IV – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (TNH)

91.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 91 of Count IV.

92.     By virtue of his employment with the Company, Savedra owed BriovaRx certain fiduciary duties, including, but not limited to, a duty to protect, and to not disclose or exploit for himself or for others, confidential information or protected patient information entrusted to him as an employee of BriovaRx.   This common law duty survives the termination of Savedra's employment with the Company.

93.     TNH was aware of and had reason to know of the fiduciary duties that Savedra owed to BriovaRx at all relevant times.

94.     TNH knowingly and intentionally committed acts that induced, encouraged or aided and abetted, and/or participated in conduct that caused, Savedra to breach and/or continue to breach his fiduciary duties to the Company by misappropriating, retaining, failing to return, disclosing and/or using BriovaRx confidential information and protected health information on behalf of TNH in direct competition with the Company.

95.     The breaches of fiduciary duties by Savedra, together with the tortious inducement and participation of TNH, have proximately caused and, unless restrained and enjoined, will continue to cause BriovaRx severe, immediate and irreparable harm, damage and injury for which the Company has no adequate remedy at law.

96.     The foregoing tortious conduct by TNH was knowing, intentional and of such an aggravated character as to warrant the imposition of exemplary damages.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count IV and award the following relief:

(a)     preliminary and permanent injunctive relief as set forth in Count XII;

(b)     imposition of a constructive trust and disgorgement of profits received by TNH as a result of its wrongful conduct;

(c)     compensatory, consequential and incidental damages in an amount to be determined at trial;

(d)     exemplary damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq.*; and

(e)     such other relief as the Court deems just and proper.

## COUNT V – MISAPPROPRIATION OF TRADE SECRETS
### (Savedra and TNH)

97.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 97 of Count V.

98.     Certain of the BriovaRx confidential information and protected health information misappropriated by Defendants, as described herein, constitute trade secrets under Texas common law.  This information includes, without limitation, BriovaRx sales and marketing plans and strategies; compiled customer and Referral Source information, including key contact information, contract terms, conditions, renewals and expirations, purchasing habits, preferences, needs and requirements, compilations of other valuable customer and Referral Source information; and reports generated from the Company's Scriptmed System.

99.     BriovaRx trade secrets derive actual and/or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by others in the specialty pharmacy industry who can obtain economic value from the disclosure or use of such information.

100.     BriovaRx has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its trade secrets.

101.     The circumstances of Savedra's employment with BriovaRx gave rise to contractual, fiduciary, common law and statutory obligations under Texas law to maintain the secrecy of the Company's trade secrets and to strictly limit their use to BriovaRx business activities and for the exclusive benefit of the Company.

102.     Defendants misappropriated BriovaRx trade secrets through improper means in that, among other things, they acquired, disclosed and/or used the trade secrets without the

Company's express or implied authority or consent and with knowledge that such information belonged exclusively to BriovaRx.

103.    Defendants purposely misappropriated BriovaRx trade secrets to undermine the Company by using the trade secrets to improperly solicit the Company's Referral Sources, manufactures, insurers and other third parties having business dealing or relationships with the Company and to otherwise unfairly compete against BriovaRx.

104.    As a direct and proximate result of the actual, threatened and/or ongoing misappropriation of BriovaRx trade secrets by Defendants, the Company has sustained and, unless restrained and enjoined, will continue to sustain severe, immediate and irreparable harm and actual loss to the value of its trade secrets and competitive advantage.

105.    As a further direct and proximate result of their actual, threatened and/or ongoing misappropriation of BriovaRx trade secrets, Defendants have been unjustly enriched by unfairly competing and deriving economic benefit at the expense of the Company.

106.    The misappropriation of BriovaRx trade secrets by Defendants, in disregard of the Company's rights, was knowing, intentional, malicious and of such an aggravated character as to warrant the imposition of exemplary damages.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count V and award the following relief:

(a)    preliminary and permanent injunctive relief as set forth in Count XII;

(b)    compensatory, consequential and incidental damages in an amount to be determined at trial;

(c)    exemplary damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq.*; and

(d)    such other relief as the Court deems just and proper.

## COUNT VI – VIOLATION OF TEXAS THEFT LIABILITY ACT
### (Savedra and TNH)

107.    BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 107 of Count VI.

108.    The Texas Theft Liability Act is set forth at Section 134.001 (*et seq.*) of the Texas Civil Practice and Remedies Code.

109.    The BriovaRx confidential information and protected health information misappropriated by Defendants constitute the Company's personal and intellectual property, and, at all relevant times, BriovaRx had the legal right and entitlement to the exclusive use, possession, custody and control of such property.

110.    In disregard of Company's legal right and entitlement, Defendants unlawfully appropriated the BriovaRx confidential information and protected health information without the Company's consent and with the intent of depriving BriovaRx of the exclusive use, possession, custody and control of such property.

111.    BriovaRx has demanded in writing that Defendants return all documents and data containing or comprising BriovaRx confidential information and protected health information in their possession, custody or control.  To date, Defendants have not accounted for or returned all such property belonging to the Company.

112.    As a direct and proximate result of the foregoing misconduct, BriovaRx has sustained and, unless restrained and enjoined, will continue to sustain severe, immediate and irreparable harm and actual loss to the value of its trade secrets and competitive advantage.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count VI and award the following relief:

(a)    preliminary and permanent injunctive relief as set forth in Count XII;

(b)     actual and statutory damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code §§ 134.003(a) and 134.005(a)(1);

(c)     reasonable attorney's fees and costs incurred through trial and any subsequent appeals pursuant to Texas Civil Practice and Remedies Code § 134.005(b); and

(d)     such other relief as the Court deems just and proper.

## COUNT VII – CONVERSION

### (Savedra and TNH)

113.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 113 of Count VII.

114.     The BriovaRx confidential information and protected health information misappropriated by Defendants constitute the Company's personal and intellectual property, and, at all relevant times, BriovaRx had the legal right and entitlement to the exclusive use, possession, custody and control of such property.

115.     In disregard of BriovaRx's legal right and entitlement, Defendants converted the BriovaRx confidential information and protected health information without the Company's consent and with the intent of depriving BriovaRx of the exclusive use, possession, custody and control of such property.

116.     BriovaRx has demanded in writing that Defendants return all documents and data containing or comprising BriovaRx confidential information and protected health information in their possession, custody or control.  To date, Defendants have not accounted for or returned all such property belonging to the Company.

117.     As a direct and proximate result of the foregoing misconduct, BriovaRx has sustained and, unless Defendants are ordered to return all documents and data containing or comprising BriovaRx confidential information and protected health information in their

possession, custody or control, will continue to sustain severe, immediate and irreparable harm and actual loss to the value of its trade secrets and competitive advantage.

118.    The misappropriation of BriovaRx confidential information, trade secrets and protected health information by Defendants, in disregard of the Company's rights, was knowing, intentional, malicious and of such an aggravated character as to warrant the imposition of exemplary damages.

WHEREFORE, BriovaRx respectfully requests the Court to enter judgment in its favor on Count VII and award the following relief:

(a)    preliminary and permanent injunctive relief as set forth in Count XII;

(b)    compensatory, consequential and incidental damages in an amount to be determined at trial;

(c)    exemplary damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq.*; and

(d)    such other relief as the Court deems just and proper.

## COUNT VIII – UNJUST ENRICHMENT
### (Savedra and TNH)

119.    BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 119 of Count VIII.

120.    The misconduct, as alleged above, has enabled and will continue to enable Defendants to compete unfairly against BriovaRx, and to improperly take advantage of and exploit the Company's legitimate and protectable business interests and goodwill.

121.    It would be inequitable and unjust for Savedra to retain compensation paid to him by TNH for his unfair competition and other misconduct.  It also would be inequitable and unjust for TNH to retain an unfair head start and/or profits achieved by its and/or Savedra's unfair competition and other misconduct undertaken on behalf of and for the benefit of TNH.

122.     As a direct and proximate result of Defendants' unjust enrichment, BriovaRx has suffered and continues to suffer severe, immediate and irreparable harm, damage and injury for which the Company has no adequate remedy at law.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count VIII and award the following relief:

> (a)     imposition of a constructive trust and disgorgement of salary/commissions paid by TNH to Savedra;
>
> (b)     imposition of a constructive trust and disgorgement of profits received by TNH as a result of its wrongful conduct; and
>
> (c)     such other relief as the Court deems just and proper.

### <u>COUNT IX – CONSTRUCTIVE FRAUD</u>
**(Savedra)**

123.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 123 of Count IX.

124.     By virtue of his employment with the Company, Savedra owed BriovaRx certain fiduciary duties, including, but not limited to, a duty to protect, and to not disclose or exploit for himself or for others, confidential information or protected patient information entrusted to him as an employee of BriovaRx.

125.     Savedra breached this fiduciary duty and took advantage of the Company during the course of his employment by misappropriating, retaining, failing to return, disclosing and/or using BriovaRx confidential information and protected health information for his own personal benefit and that of TNH.

126.     Savedra's misconduct during the course of his employment while BriovaRx compensated him for his services amounts to constructive fraud, which has proximately caused

BriovaRx severe, immediate and irreparable harm, damage and injury for which the Company has no adequate remedy at law.

127.     Such misconduct was knowing, intentional and of such an aggravated character as to warrant the imposition of exemplary damages.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count IX and award the following relief:

(a)     imposition of a constructive trust and disgorgement of salary/commissions wrongfully paid by BriovaRx to Savedra;

(b)     exemplary damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 41.001, *et seq.*; and

(c)     such other relief as the Court deems just and proper.

## COUNT X – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT

### (Savedra)

128.     BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this Paragraph 128 of Count X.

129.     The Computer Fraud and Abuse Act ("CFAA") is set forth at 18 U.S.C. § 1030.

130.     The Company-issued laptop computer and iPad used by Saveda in connection with his employment by BriovaRx constitute "protected computers" for purposes of the CFAA. At all relevant times, the protected computers had access *via* the Internet to the Company's server and network located and maintained in Illinois, and Savedra used the computers, including accessing and connecting them to the Company's server and network, across state lines in interstate commerce while conducting business on behalf of the Company and otherwise.

131.     Savedra intentionally accessed the protected computers both during and subsequent to his employment by BriovaRx without authorization, and/or by exceeding his authorization, with the intent to defraud BriovaRx by destroying incriminating evidence and

preventing the Company from discovering at least certain of his misconduct.  In accessing the protected computers with such intent, Savedra knowingly caused the transmission of a program, information, code and/or command that erased and otherwise impaired electronically stored information from the iPad and deleted and otherwise impaired electronically stored information from the laptop.  Savedra thereby intentionally and/or recklessly caused damage to the protected computers.

132.    Savedra also intentionally accessed the protected computers both during and subsequent to his employment by BriovaRx without authorization, and/or by exceeding his authorization, with the intent to defraud the Company by downloading, copying and otherwise transmitting electronically stored information containing BriovaRx confidential information and protected patient information.  In accessing the protected computers with such intent, Savedra misappropriated electronically stored information containing BriovaRx confidential information and protected patient information.

133.    By engaging in the foregoing misconduct, Savedra acted outside the scope of his employment with, and in breach of his contractual and fiduciary duties to, BriovaRx and, thereby, terminated any agency relationship or any other legal basis upon which he could claim authorization or authority for accessing the protected computers.

134.    As a direct and proximate result of the foregoing misconduct, BriovaRx has suffered loss in excess of $5,000 during a one-year period, resulting from costs associated with conducing a computer forensic damage assessment and attempting to restore the electronically stored information to its condition prior to the misconduct.  In addition, the value of the electronically stored information misappropriated and otherwise modified or impaired (or potentially modified or impaired) by Savedra exceeds $5,000.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count X and award the following relief:

      (a)      preliminary and permanent injunctive relief as set forth in Count XII;

      (b)      actual and statutory damages in an amount to be determined at trial pursuant to 18 U.S.C. § 1030(g); and

      (c)      such other relief as the Court deems just and proper.

## COUNT XI – VIOLATION OF TEXAS COMPUTER CRIMES STATUTE

### (Savedra)

135.    BriovaRx restates and realleges paragraph nos. 1 through 71 as and for this paragraph 135 of Count XI.

136.    The Texas Computer Crimes statute is set forth at Chapter 33 of the Texas Penal Code.  Violations of the statute provide for a civil cause of action pursuant to Section 143.001(a) of the Texas Civil Practice and Remedies Code.

137.    The Company-issued laptop computer and iPad used by Savedra in connection with his employment by BriovaRx constitute "computers," and the Company's network and server, respectively, constitute a "computer network" and "computer system," for purposes of the Texas Computer Crimes Statute.

138.    Savedra knowingly and intentionally accessed the computers, computer network and/or computer system both during and subsequent to his employment by BriovaRx without the effective consent of the Company and with the intent to defraud the Company by destroying incriminating evidence and preventing the Company from discovering at least certain of his misconduct.  In accessing the computers, computer network and/or computer system with such intent, Savedra intentionally caused the transmission of a program, information, code and/or command that erased and otherwise altered or impaired electronically stored information from

the iPad and deleted and otherwise altered or impaired electronically stored information from the laptop.  Savedra thereby intentionally and/or recklessly caused damage to the computers.

139.    Savedra also knowingly and intentionally accessed the computers, computer network and/or computer system both during and subsequent to his employment by BriovaRx without the effective consent of the Company and with the intent to defraud the Company by downloading, copying and otherwise transmitting electronically stored information containing BriovaRx confidential information and protected patient information.    In accessing the computers, computer network and/or computer system with such intent, Savedra misappropriated electronically stored information containing BriovaRx confidential information and protected patient information (to include identifying information of third parties).

140.    By engaging in the foregoing misconduct, Savedra acted outside the scope of his employment with, and in breach of his contractual and fiduciary duties to, BriovaRx and, thereby, terminated any agency relationship or any other legal basis upon which he could claim effective consent of the Company to access the computers, computer network and computer system.

141.    As a direct and proximate result of the foregoing misconduct, BriovaRx has suffered loss, damage and injury resulting from costs associated with conducing a computer forensic damage assessment and attempting to restore the electronically stored information to its condition prior to the misconduct.  BriovaRx also has suffered loss, damage and injury resulting from the knowing and intentional misappropriation of its confidential information and protected patient information.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count XI and award the following relief:

(a)     preliminary and permanent injunctive relief as set forth in Count XII;

(b)     actual damages in an amount to be determined at trial pursuant to Texas Civil Practice and Remedies Code § 143.002;(1)

(c)     reasonable attorney's fees and costs incurred through trial and any subsequent appeals pursuant to Texas Civil Practice and Remedies Code § 143.002(2); and

(d)     such other relief as the Court deems just and proper.

## COUNT XII – INJUNCTIVE RELIEF

### (Savedra and TNH)

142.    BriovaRx restates and realleges paragraph nos. 1 through 141 as and for this paragraph 142 of Count XII.

143.    BriovaRx has clearly ascertainable rights in need of protection, including at least the enforcement of the Agreements without any tortious interference and preservation of its confidential information and protected health information from any actual, threatened and/or ongoing misappropriation of the same.

144.    BriovaRx has a strong likelihood of prevailing on the merits of its claims, each of which entitles the Company to injunctive relief.

145.    BriovaRx's remedy at law is inadequate, and the Company will suffer irreparable harm to its legitimate and protectable business interests and goodwill if injunctive relief is not granted.

146.    The public interest will be served through the grant of injunctive relief because it will encourage adherence to contractual obligations, protect competitively sensitive information and other goodwill from misappropriation, and otherwise guard against unfair competition.

**WHEREFORE**, BriovaRx respectfully requests the Court to enter judgment in its favor on Count XII and award the following relief pursuant to Federal Rule of Civil Procedure 65:

(a)    preliminary and permanent injunctive relief to restrain and enjoin Defendants from, directly or indirectly, disclosing, using or relying upon BriovaRx confidential information or protected health information;

(b)    preliminary and permanent injunctive relief to compel Defendants to return all documents and data containing or comprising BriovaRx confidential information or protected health information;

(c)    preliminary and permanent injunctive relief to restrain and enjoin Savedra for a period of twelve (12) months from working for TNH as Business Development Manager or in any other capacity in which he could unfairly compete against BriovaRx;

(d)    preliminary and permanent injunctive relief to restrain and enjoin Defendants for a period of twelve (12) months from contacting BriovaRx Referral Sources, including health care professionals and their patients, identified in the BriovaRx confidential information and protected health information misappropriated by Defendants; and

(e)    such other relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff BriovaRx, LLC hereby demands a trial by jury on all triable issues.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
daniel@jacksonlaw-tx.com

Attorney-in-charge for Plaintiff

**OF COUNSEL:**

The Jackson Law Firm
Scott K. Vastine, SBN 24056469
S.D. of Texas No. 743194
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
scott@jacksonlaw-tx.com

Vedder Price, P.C.
Nicholas Anaclerio
Frederic T. Knape
Emily C. Fess
222 North LaSalle Street
Chicago, Illinois  60601
(312) 609-7500
(312) 609--5005 – fax
nanaclerio@vedderprice.com
fknape@vedderprice.com
efess@vedderprice.com