IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRIOVARX, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No.: 4:13-cv-03056 |
| JERRY SAVEDRA and VALLEY CAMPUS PHARMACY, INC., D/B/A TNH PHARMACY II, | § § § § § | |
| Defendants. | § § | |

**DEFENDANT CAMPUS PHARMACY, INC., D/B/A TNH PHARMACY'S
RESPONSE TO PLAINTIFF BRIOVARX LLC'S
MOTION FOR VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

### I. INTRODUCTION

Defendant Campus Pharmacy, Inc. d/b/a TNH Pharmacy II ("TNH") welcomes the fact that Plaintiff BriovaRx LLC ("Briova") finally appreciates the futility of pursuing this action and now agrees that it should be dismissed – the position that TNH has had since the start of this action. However, TNH does not agree with Briova's assertions that it had a legitimate basis for filing the complaint to begin with and to maintain this action for seven months, and certainly does not agree that it should simply be allowed to walk away from this litigation without final resolution of the issues or reimbursement to TNH of the costs and attorney's fees which it had to incur to defend itself against these claims which Briova no longer wishes to pursue.

It is respectfully submitted that the Court should impose as a term and condition of dismissal that: (1) the action be dismissed with prejudice; or (2) Briova be required to pay TNH the expenses it incurred in defending this lawsuit, including TNH's attorney's fees. It is also

respectfully submitted that TNH should be awarded the costs incurred in responding to this motion and retain jurisdiction to hear further motion for sanctions and attorney's fees against TNH.

## II. FACTUAL BACKGROUND

### A. Briova's Filing of This Action

Briova filed its complaint in this action on October 16, 2013, alleging, without basis, that TNH was in possession of its trade secret and or confidential information acquired from Briova's former employee, Defendant Jerry Savedra ("Savedra"). Briova asserted claims against TNH for tortious interference with contract, aiding and abetting breach of fiduciary duty, misappropriation of trade secrets, violation of Texas Theft Liability Act, Conversion and Unjust Enrichment. Briova sought by its complaint to recover damages against TNH and also sought injunctive relief against TNH.

### B. TNH Agreed Not to Oppose the Issuance of a Preliminary Injunction Sought by Briova

At the same time as it filed its Complaint, Briova also filed a motion for a Temporary Restraining Order and Preliminary Injunction, seeking to enjoin Defendants TNH and Savedra from retaining possession of, destroying, damaging, deleting, transferring, directly or indirectly using TNH trade secret, confidential or proprietary information.

Knowing that it in fact had none of Briova's confidential, proprietary or trade secret information in its possession, TNH agreed not to oppose the preliminary injunction sought by Briova. The preliminary injunction sought by Briova was accordingly granted, following the submission of an unopposed motion. [Docket No. 13.]

### C. TNH's Offer to Make its Computer Systems Available for Inspection to Confirm that it is Not in Possession of any Briova Information

In addition to agreeing not to oppose Briova's motion for a preliminary injunction, TNH also agreed to make all of its computers and electronic storage systems available for forensic analysis. On October 23, 2013, TNH's counsel sent an email to Briova's counsel reaffirming that TNH had none of Briova's information in its possession. TNH's counsel also offered to make its computer and storage systems available to Briova for forensic analysis so that Briova could confirm that TNH had none of its information:

> I have made as clear as I possibly can both to you and to Nick that based on my client's representation that it has not accessed or stored on any of its computers . . . any of your client's information . . . , there is nothing for my client to make available for inspection and imaging under the terms of the TRO and now the preliminary injunction. . . . [¶] As I have also tried to make as clear to you as I possibly can, my client is agreeable, notwithstanding the foregoing, to make available its computers, storage devices, etc., for forensic analysis.

Exh. 1.

Despite TNH offering to make its computers and storage systems available to Briova for forensic analysis in October, 2013, over eight months ago, Briova has still not conducted this analysis, which would confirm that, as it has been repeatedly informed, TNH has none of its confidential, proprietary or trade secret information.

### D. TNH Obtains – at its Own Expense – and Provides to Briova Two Separate Forensic Reports Confirming that it Has No Briova Information

In addition to offering to make its computers available for inspection, TNH conducted two separate forensic analyses of all computers and networks to which Savedra potentially had access – at its own expense – to confirm that Savedra had not uploaded any of Briova's confidential information onto TNH's computers. *See* Exhs. 2 and 3. Both analyses found no

evidence of any Briova information being uploaded onto TNH's computer systems, or any evidence that TNH was in possession of any Briova confidential information. In October, 2013, TNH, through its counsel, provided reports of both forensic analyses to Briova's counsel, in the hope that Briova would voluntarily dismiss its claims without requiring TNH to have to spend any further money defending itself in this action. Unfortunately, Briova chose not to do so at that time.

### E. Briova's Service of its Initial Disclosures and Failure to Provide Any Meaningful Information on its Claimed Trade Secrets or Alleged Damages

On February 7, 2014, the parties exchanged their initial disclosures pursuant to Rule 26(a)(1). Briova's initial disclosures, however, provided no information regarding exactly what trade secret information it claimed had been misappropriated.

Even more tellingly, in the section of Briova's initial disclosures entitled "Computation of Damages," Briova offered no information whatsoever about its claimed damages. Instead, Briova's initial disclosures "Computation of Damages" section states that Briova:

> has incurred actual, statutory, compensatory, consequential and incidental damages from the Defendant's misconduct as alleged in the complaint, including, without limitation, loss of sales, reputation, and value of trade secrets, confidential information and other business interests.

Exh. 4.

Briova thus made no effort in its initial disclosures to quantify its claimed damages, to identify what customers it has allegedly lost, what misappropriated trade secrets it seeks to recover the value of as part of its damages, or any other meaningful computation of damages. In short, Briova's initial disclosures failed to identify its claimed trade secrets in any way, shape or form and failed to provide any meaningful information regarding its claimed damages.

### F. Briova Fails and Refuses to Identify its Claimed Trade Secrets and Alleged Damages and Fails to Meet and Confer on these Issues, Choosing, Instead, to Seek the Dismissal of this Action Without Prejudice

On February 11, 2014, TNH served written discovery in the form of Interrogatories, Requests for Production and Requests for Admission on Briova. This written discovery was focused, among other things, on an effort to learn the specific trade secrets which Briova claimed was misappropriated by TNH and to learn the specific damages that Briova claimed to have suffered as a result.

For example, Plaintiff's Interrogatory No. 1 asked Briova to "[p]lease identify with specificity all of the alleged trade secrets and any confidential or proprietary information that Plaintiff alleges or contends that Defendant misappropriated or misused . . ." TNH's Interrogatory No. 9 asked Briova to "[q]uantify and state how you calculated the actual damages that you suffered as alleged in your Rule 26(A)(1) Initial Disclosure," while Interrogatory No. 10 asked BriovaRx to "[q]uantify the loss of sales that you suffered as alleged in your Rule 26(A)(1) Initial Disclosure." Exh. 5.

Briova failed to provide this basic information about its claims. For example, rather than specifically identifying any of its alleged trade secrets in response to TNH's discovery, Briova simply repeated, *verbatim*, the generic descriptions of its claimed trade secrets set forth in paragraph 22 of its complaint. Briova's discovery responses similarly failed to provide any meaningful information regarding its claimed damages. Briova's discovery responses made no effort to quantify or calculate its claimed damages, stating, instead, that its "theory of compensatory damages against TNH is predicated upon the unjust enrichment from the misappropriation . . . BriovaRX also seeks compensatory damages for the loss of the competitive value of and goodwill associated with the information identified in Interrogatory No. 1 and for other financial harm incurred as a result of the misappropriation." Exh. 6.

On April 16, 2014, TNH's counsel sent Briova's counsel a meet and confer letter pointing out the deficiency with these and other of Briova's discovery responses, and asking Briova's counsel to let him know when h is available to discuss this further. Exh. 7.

On or about April 22, 2014, during a conversation between TNH's counsel (who had not yet made a *pro hac vice* appearance in this action) and Briova's counsel, Briova's counsel acknowledged receipt of the foregoing meet and confer letter, but indicated that he did not believe it appropriate engaging in a meet and confer with TNH's counsel until they made a *pro hac vice* appearance in the action. TNH's counsel applied to appear *pro hac vice* shortly thereafter, and were admitted to appear *pro hac vice* on May 2, 2014. [Docket Nos. 40 and 41.]

On May 2, 2014, following the *pro hac vice* admissions which Briova's counsel had demanded as a condition to meet and confer on Briova's deficient discovery responses, TNH's counsel emailed Briova's counsel asking when he was available to meet and confer on the discovery issues. Exh. 8.

Briova's counsel responded on May 5, 2014, stating that he was tied up on a separate matter and would "not have an opportunity to meet and confer until later this week at the earliest." Exh. 9.

On May 13, 2014, Briova's counsel emailed TNH's counsel stating that Briova was "currently in the midst of computer forensics on the Saavedra computer and devices." In light of this, he suggested that "we table the discovery issues on both sides until we complete the computer forensics." Exh. 10. TNH's counsel responded, noting that the forensic examination of Mr. Saavedra's computer had no bearing on the issues related to Briova's deficient discovery responses. TNH's counsel explained that "there is nothing that you would learn from the forensic examination of Mr. Saavedra's computer that would be necessary for you to specifically identify

the alleged trade secrets which you claim to have been misappropriated, the sales which you claim to have lost as a result of Defendants' alleged misconduct, or any of the other information sought by the discovery at issue." Nevertheless, TNH's counsel agreed to delay the requested meet and confer for no more than two weeks, until May 28, 2014. TNH's counsel explained that in light of the upcoming trial date, discovery cut-off date and expert disclosure date in this action, it was not possible to delay the completion of this meet and confer process any longer. Exh. 11.

Having not heard back from Briova's counsel by May 28, 2014, on June 6, 2014, TNH's counsel again emailed Briova's counsel to follow up on the meet and confer, asking for Briova's counsel's availability to meet and confer regarding the discovery issues. Exh. 12.

On June 12, 2014, Briova's counsel responded to TNH's counsel's repeated attempts to meet and confer on Briova's deficient discovery responses, stating:

> Subsequent to my recent discussions with Roy, we intend to file a motion for voluntary dismissal that will moot the discovery disputes between the parties. Accordingly, I do not see need for us to meet and confer at this time.

Exh. 13. The filing of Briova's motion followed shortly thereafter.

It is apparent from this time line that Briova's decision to seek the voluntary dismissal of this action is motivated in large part by its refusal and inability to properly and specifically identify its claimed trade secrets and the damages which its claims to have suffered, as requested in discovery. Briova has apparently decided that it would rather walk away from this action than identify its claimed trade secrets and damages in discovery, or admit that it is not able to do so, which would likely result in the defeat of its claims on their merits.

Under these circumstances, it would be unfair to permit a dismissal of the action without prejudice and without consequence. Instead, this action should be dismissed with prejudice, so

that TNH is not left exposed to the assertion of these claims all over again. Alternatively, if the Court is inclined to grant Briova's request to dismiss the action without prejudice, any such dismissal should be conditioned on Briova paying TNH's costs and attorney's fees defending itself on this action to date.

### III.   ARGUMENT

**A. At this Stage of the Action, the Court Must Only Dismiss the Action On Terms that the Court Considers Proper**

While Fed. R. Civ. P. 41(a)(1) permits the voluntary dismissal of an action by a plaintiff, without the need for a court order, before the defendant has answered the complaint or filed a motion for summary judgment, any later dismissal can only be by Court order, and must be "on terms that the court considers proper." Fed. R. Civ. P. (a) (2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.")

**B. The Action Should be Dismissed with Prejudice**

Although Briova has moved for a voluntary dismissal without prejudice, the Court can, if appropriate, order that the dismissal be with prejudice. *See Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 320 (5th Cir. 2002) ("A threshold question is whether Rule 41(a)(2) ever allows a district court to 'convert' a motion for Rule 41(a)(2) dismissal without prejudice, granting it with prejudice. . . . We agree with these Circuits that Rule 41(a)(2) clearly provides authority to the district court to grant the dismissal on the condition that it be with prejudice.")

Whether a dismissal is to be with or without prejudice is discretionary with the court, and it may order the dismissal with prejudice where it would be inequitable to allow plaintiff to refile the action. In exercising this discretion, the court must bear in mind that Rule 41(a)(2) exists

chiefly for the defendant's protection. *See Fisher v. Puerto Rico Marine Management, Inc.*, 940 F.2d 1502, 1502-03 (11th Cir. 1991) ("the decision whether or not to grant such a dismissal [without prejudice] is within the sound discretion of the district court and reviewable only for abuse of discretion . . . And, when exercising its discretion in considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants.")

In *We are America v. Maricopa County Board of Supervisors*, 297 F.R.D. 373, 395 (D. Ariz. 2013), the Court found that three claims which the plaintiffs requested be dismissed without prejudice instead be dismissed with prejudice, finding the Defendants' argument that "'[p]laintiffs have had sufficient time to develop an evidentiary record to present genuine issues of material fact precluding summary judgment and to substantively respond to' defendants' summary judgment motion on the three non-preemption claims'" to be well taken. The Court also reasoned that "the defendants should not have the cloud of future litigation over the other claims," which were being dismissed.

Similarly, in *Rouse v. Walter & Associates, L.L.C.*, 242 F.R.D. 519, 523-24 (S.D.Iowa, 2007), the Court denied a counterclaimants' request that the counterclaims be dismissed without prejudice, finding that those counterclaims should instead be dismissed with prejudice. While finding the counterclaimant's expressed reasons for dismissing the counterclaims to be legitimate, the Court explained:

> However, if the Court dismissed the claims without prejudice, Defendants could potentially bring these same claims at some point in time down the line, despite the other parties having already spent time, energy, and money in the present action defending the claims, all of which may be of diminished or no value upon later re-litigation of the same matters. [¶] Based upon the time, money, and effort already invested by Plaintiffs defending these counterclaims, and Defendants' representation that establishing

> significant damages for these claims is unlikely, the Court finds, pursuant to the provisions of Federal Rule of Civil Procedure 41(a)(2), that it is a reasonable condition that the dismissals be with prejudice.

*Id.*

Here Briova's complaint should be dismissed with prejudice for similar reasons. First, it is unfair to leave TNH with the cloud of future litigation hanging over it. Additionally, TNH has spent substantial amounts of time and money defending itself against Briova's claims, and it would be unfair to subject it to the possible re-litigation of those same claims, when the value of the work done in the defense of their claims would likely be of diminished or limited value.

Additionally, it is clear that Briova seeks to dismiss its claims because it is unable or unwilling to specifically identify its claimed trade secrets and alleged damages in discovery. A specific identification of Briova's claimed trade secrets is required for Briova to pursue its claims. Indeed, many jurisdictions require a specific identification of trade secrets as a condition to the initiation of discovery. In *United Services Auto. Ass'n v. Mitek Systems, Inc.*, 289 F.R.D. 244 (W.D. Tex. 2013), the Court ordered the Plaintiff in a trade secret misappropriation action to specifically identify its trade secrets. In support of this ruling, the Court recognized that such specification is required in a number of jurisdictions:

> A number of states have enacted procedures requiring that trade secrets be identified before discovery commences. . . . The purpose for this procedural rule is to "prevent trade secret related discovery from beginning before a particular trade secret has been identified." . . . This allows "well-investigated claims" to proceed while discouraging meritless trade secret claims. Pre–Discovery Identification also "assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope"; moreover, it provides defendants with an equal playing field, allowing them ample time and opportunity to develop their defense rather than ambushing them on the eve of trial. Finally, it allows the Court to utilize its resources more effectively by exposing the viable claims,

> *permitting early dismissal of the nonviable claims*, and allowing the case to proceed unfettered by needless discovery disputes pertaining to unquestionably relevant information central to the parties' claims and/or defenses.

*Id.* at 248 (Emphasis added, internal citations omitted.)

The *United Services* Court noted that "[a]lthough neither Texas nor Fifth Circuit law requires Pre–Discovery Identification, the Federal Rules of Civil Procedure provide a mechanism for fostering the same goal of facilitating discovery in unique cases." *Id.*

Indeed, a party's failure to specifically identify its trade secrets can lead to the disposal of their claims by summary judgment. *See e.g. Berry v. Dillon*, 291 Fed.Appx. 792, 795 (9th Cir. 2008) ("Berry failed to raise a triable issue of material fact on his trade secret misappropriation claim. Berry failed either to identify any trade secret that had been misappropriated or to adduce evidence that any of his programs derived 'independent economic value ... from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from [their] disclosure or use.'")

Briova's failure to specifically identify its trade secrets and its claimed damages in discovery thus could potentially have resulted in the disposal of its claims on summary judgment. Under these circumstances, the Court should order the dismissal of Briova's claims with prejudice.

### C. If the Court Believes it Appropriate to Dismiss the Action Without Prejudice, Plaintiff Should be Required to Reimburse Defendants for All Costs and Fees Incurred

If the Court for any reason chooses not to order the dismissal of Briova's complaint with prejudice, the Court should order Briova to pay TNH's costs and attorney's fees incurred in defending itself against the claims that Briova no longer wishes to pursue. *See e.g. Radiant Technology Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 206 (N.D.Tex.,1988) ("RTC's

motion to dismiss is granted on the condition that it pay to Electrovert its attorney's fees and costs of court that are not directly usable in the California action.") and *Yoffe v. Keller Industries, Inc.*, 580 F.2d 126, 129 (5th Cir. 1978) (a court has ample authority to award attorneys' fees as a term and condition of a voluntary dismissal in order to protect defendants.)

Here Briova's complaint should be dismissed with prejudice. But if it is dismissed without prejudice, such dismissal should be conditioned on Briova paying TNH all costs and fees incurred in defending itself in this action.

## IV. CONCLUSION

For the foregoing reasons, this action should be dismissed as Plaintiff has requested, but the dismissal should be with prejudice. If, for any reason, the Court chooses to permit the dismissal of this action without prejudice, it should require plaintiff to reimburse Defendant for the costs and attorney's fees incurred in defending themselves against this action that plaintiff has now chosen not to pursue.

July 3, 2014

Respectfully submitted,

WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP

By:    /s/ Eric Levinrad
       Eric Levinrad

Roy R. Rifkin
*Admitted Pro Hac Vice*
CA Bar No.: 82672
*rrifkin@wrslawyers.com*
Eric Levinrad
*Admitted Pro Hac Vice*
CA Bar No.: 169025
*elevinrad@wrslawyers.com*

11400 W. Olympic Blvd., 9th Floor
Los Angeles, California 90064
Tel: 310-478-4100
Fax: 310-478-6363

and

THE TAYLOR LAW OFFICES, P.C.

Thomas L. Taylor III
Texas State Bar: 19733700
taylor@tltaylorlaw.com
Andrew M. Goforth
Texas State Bar: 24076405
goforth@tltaylorlaw.com

4550 Post Oak Place Drive, Suite 241
Houston, Texas 77027
Tel: 713.626.5300
Fax: 713.402.6154

COUNSEL FOR VALLEY CAMPUS PHARMACY, INC., D/B/A TNH PHARMACY II

## CERTIFICATE OF SERVICE

On July 3, 2014, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the CM/ECF electronic filing system. I hereby certify that I have provided copies to all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Eric Levinrad
Eric Levinrad